UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>ALLEGHENY COUNTY HEALTH DEPARTMENT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>Defendant. | Civil Action No. 2:22-cv-729 |

**COMPLAINT**

Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Allegheny County Health Department ("ACHD"), allege:

**NATURE OF THE ACTION**

1. This is a civil action brought against Defendant United States Steel Corporation ("USS" or "Defendant") for injunctive relief and assessment of civil penalties for violations of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. §§ 7401 to 7671q, and its implementing regulations at the Edgar Thomson Steel Plant in Braddock, Pennsylvania (the "Facility").

2. Defendant uses the Facility to process raw iron into steel slabs. The Facility includes, among many other components, two Blast Furnaces and a Basic Oxygen Processing Shop.

1

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355. In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Allegheny County Health Department's claims.

4. Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395 because it is the judicial District in which Defendant conducts business and in which the violations at the Facility occurred and continue to occur.

**DEFENDANT**

5. Defendant is a private corporation incorporated under the laws of Delaware. Defendant principally conducts business at USS Tower, 600 Grant Street, Pittsburgh, Pennsylvania 15219-2749.

6. Defendant owns and operates the Facility, which is located at 13th Street and Braddock Avenue in Braddock, Allegheny County, Pennsylvania 15104.

7. Defendant is a "person" under Section 302(e) of the Act, 42 U.S.C. § 7602(e).

**NOTICE AND AUTHORITY**

8. The United States is authorized to commence this action on behalf of EPA pursuant to 28 U.S.C. §§ 516 and 519, and Sections 113(b) and 305 of the CAA, 42 U.S.C. §§ 7413(b) and 7605.

9. ACHD is authorized to commence this action pursuant to the Pennsylvania Air Pollution Control Act, 35 Pa. Cons. Stat. §§ 4009.1(a) and 4012(g), and the Pennsylvania Local Health Administration Law, 16 Pa. Cons. Stat. §§ 12001-12028.

10. On November 9, 2017, EPA issued a Notice of Violation/Notice of Noncompliance ("NOV") to Defendant in accordance with Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

11. As required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant and ACHD have had actual notice of the violations alleged against the Defendant for at least 30 days before the filing of this Complaint.

12. ACHD is a Plaintiff in this action and has notice of its commencement in accordance with Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## STATUTORY AND REGULATORY BACKGROUND

13. The CAA was enacted "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

14. The CAA establishes numerous programs to achieve this goal, including: (a) Section 112, 42 U.S.C. § 7412, which addresses emissions of hazardous air pollutants; (b) Section 110, 42 U.S.C. § 7410, which provides for state implementation plans to address national ambient air quality standards; and (c) Title V, 42 U.S.C. §§ 7661-7661f, which provides for state and local governments to issue federally enforceable operating permits.

### National Emission Standards for Hazardous Air Pollutants (MACTs)

15. Section 112 of the Act, 42 U.S.C. § 7412, sets forth a national program for the control of hazardous air pollutants ("HAPs"). Under Section 112(b), Congress listed 188 HAPs believed to cause adverse health or environmental effects. 42 U.S.C. § 7412(b).

16. Under the Act, EPA must publish a list of all categories and subcategories of "major sources" and "area sources" of HAPs. 42 U.S.C. § 7412(b)-(c).

17. A "category" of sources is a group of sources having some common features suggesting that they should be regulated in the same way and on the same schedule. 57 Fed. Reg. 31576, 31578 (July 16, 1992).

18. A "major source" means any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit 10 tons of any HAP, or 25 tons or more of any combination of HAPs, per year. 42 U.S.C. § 7412(a)(1).

19. An "area source" is any stationary source of HAPs that is not a major source. 42 U.S.C. § 7412(a)(2).

20. A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7412(a)(3) (incorporating the definition in Section 111(a) of the Act, 42 U.S.C. § 7411(a)(3)).

21. Once a category is on the list, Section 112(d)(1) of the Act requires EPA to promulgate federal emissions standards for each category or subcategory of major and area sources of HAPs. 42 U.S.C. § 7412(d)(1). These emission standards are known as the National Emissions Standards for Hazardous Air Pollutants for Source Categories or "MACT" (maximum achievable control technology) standards. The MACTs are codified at 40 C.F.R. Part 63.

22. An "affected source" is the collection of equipment or activities within a single contiguous area and under common control that is included in a source category for which a MACT is established. 40 C.F.R. § 63.2. Each MACT defines the relevant affected source or sources within a facility to which the MACT applies.

23. Section 112(i)(3) of the Act prohibits the operation of a source in violation of any emissions standard, limitation, or regulation issued under Section 112. 42 U.S.C. § 7412(i)(3). Therefore, a violation of the MACTs is a violation of the Act.

24. EPA originally promulgated the MACT for Integrated Iron and Steel Manufacturing ("Steel MACT") on March 20, 2003, pursuant to Section 112(c) of the Act, 42 U.S.C. § 7412(c). The Steel MACT is codified at 40 C.F.R. Part 63, Subpart FFFFF, §§ 63.7780-63.7852.

25. The Steel MACT applies to owners and/or operators of any integrated iron and steel manufacturing facility that is a major source of HAP emissions, such as Defendant's Facility. 40 C.F.R. § 63.7781.

26. A source subject to the Steel MACT must be in compliance with the MACT's emissions limitations and operation and maintenance requirements. 40 C.F.R. § 63.7810.

27. Within an integrated iron and steel manufacturing facility, the Steel MACT applies to existing or new "affected sources," which include blast furnaces and basic oxygen process ("BOP") furnaces. 40 C.F.R. § 63.7782(a)-(b).

28. The Steel MACT accordingly covers emissions from, among other things, blast furnace casthouses, BOP shops, and BOP shop ancillary operations. 40 C.F.R. § 63.7782(c).

29. An affected source such as a blast furnace or BOP shop is "existing" if construction or reconstruction commenced before July 13, 2001. 40 C.F.R. § 63.7782(d). If construction or reconstruction commenced after July 13, 2001, the affected source is considered "new." 40 C.F.R. § 63.7782(e).

30. The Steel MACT imposes visible emission requirements for affected sources. *E.g.*, 40 C.F.R. Part 63, Subpart FFFFF, App. Tables 1, 3; 40 C.F.R. §§ 63.7790(a) and

63.7833(a). In addition, the Steel MACT requires continuous compliance with operations and maintenance ("O&M") requirements for capture systems and control devices. 40 C.F.R. §§ 63.7790(b), 63.7834(a).

31. Section 63.7800(b) of the Steel MACT requires affected sources to prepare and operate in accordance with a written O&M Plan for each capture system or control device subject to an operating limit under Section 63.7790(b). 40 C.F.R. § 63.7800(b).

32. Section 63.7800(b)(1) of the Steel MACT likewise requires monthly inspections of equipment important to the performance of the total capture system, including pressure sensors, dampers, and damper switches. The monthly inspection must include observations of the physical appearance of the equipment, and the O&M Plan must include requirements to repair any defect or deficiency in the capture system before the next scheduled inspection. 40 C.F.R. § 63.7800(b)(1).

33. Under Section 63.7834(a)(1), a facility's owner or operator must initiate corrective actions and record all information needed to document conformance with the O&M requirements. 40 C.F.R. § 63.7834(a)(1).

34. Effective as of April 1, 2002, EPA delegated to ACHD authority to implement and enforce, along with EPA, the MACT standards including the Steel MACT. 67 Fed. Reg. 4363 (Jan. 30, 2002).

**State Implementation Plan**

35. Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a federally enforceable State Implementation Plan ("SIP") that provides for the attainment and maintenance of national ambient air quality standards within the state.

36. The EPA-approved Pennsylvania SIP includes federally enforceable air pollution control regulations promulgated by the Allegheny County Health Department, which are codified in Article XXI of the Allegheny County Health Department's Rules and Regulations. 40 C.F.R. § 52.2020(c)(2); 67 Fed. Reg. 68935 (Nov. 14, 2002).

37. ACHD's federally enforceable regulations include general opacity limitations promulgated at ACHD Article XXI § 2104.01.a. These opacity limitations require that visible emissions from a facility located in Allegheny County shall not equal or exceed an opacity of 20% in any one six-minute average period, or 60% at any time. ACHD Article XXI § 2104.01.a.

38. ACHD's federally enforceable regulations also include provisions that require facility operators such as Defendant to take all reasonable actions to prevent fugitive air contaminants from becoming air-borne. ACHD Article XXI § 2105.49.

39. ACHD's federally enforceable regulations further require air pollution control equipment to be properly installed, maintained, and operated consistent with good air pollution control practices. ACHD Article XXI § 2105.03. When a breakdown occurs in such a manner as to have a substantial likelihood of causing an emissions violation or causing the emission into the open air of potentially toxic or hazardous materials, ACHD Article XXI § 2108.01.c requires the person responsible to notify ACHD within 60 minutes.

### Title V Operating Permits

40. Title V of the Act requires all "major sources" of air pollution to obtain an operating permit including emission limitations and other conditions necessary to comply with applicable CAA requirements. 42 U.S.C. §§ 7661a-7661f. A Title V permit consolidates all of a major stationary source's state and federal CAA obligations into one permit. 42 U.S.C. § 7661a(f).

41. The Title V program generally does not impose any new substantive requirements on a regulated source, but requires the source to obtain an operating permit containing all the terms and conditions necessary to assure compliance with all the requirements under the Act applicable to the source, including any applicable MACT and SIP provisions. 42 U.S.C. §§ 7661a(a) and 7661c(a); 40 C.F.R. § 70.1(b).

42. Section 502(a) of the Act makes it unlawful for any person to violate any term or condition of a Title V permit or to operate a major source except in compliance with its Title V permit. 42 U.S.C. § 7661a(a).

### CAA Enforcement Provisions

43. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil judicial enforcement action against any person whenever such person has violated, or is in violation of, any requirement or prohibition of any applicable SIP, permit, or other requirement of the Act.

44. Section 113(b) of the Act, 42 U.S.C. § 7413(b), grants a district court jurisdiction to, *inter alia*, restrain such violations, require compliance, assess civil penalties of up to $25,000 per day for each violation, and award any other appropriate relief.

45.	The Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, 104 Stat. 890, Oct. 5, 1990, as amended, 28 U.S.C. § 2461 note, requires EPA to periodically adjust civil penalties for inflation. Pursuant to this authority, EPA increased the amount of civil penalties to $37,500 per day for violations under Section 113(b) of the Act, 42 U.S.C. § 7413(b), occurring on and after January 13, 2009 through November 2, 2015, and up to $109,024 per day for violations occurring after November 2, 2015 and assessed on or after January 12, 2022. 40 C.F.R. § 19.4.

46.	As a municipal air pollution control agency, ACHD is authorized by the Pennsylvania Air Pollution Control Act, 35 Pa. Cons. Stat. §§ 4009.1(a) and 4012(g), and the Pennsylvania Local Health Administration Law, 19 Pa. Const. Stat. §§ 12001-12028, to initiate a judicial enforcement action for permanent or temporary injunctive relief, and/or for a civil penalty of up to $25,000 per day for each violation occurring after July 9, 1996. 35 Pa. Cons. Stat. §§ 4009.1(a) and 4012(g); Article XXI §§ 2109.02a and 2109.06.a.1.

## General Allegations

47.	Defendant is, and at all relevant times has been, the "owner" and "operator" of the Facility within the meaning of the Act and the regulations promulgated pursuant to the Act.

48.	The Facility is a "major source" within the meaning of the Act and the regulations promulgated pursuant to the Act, and is subject to the Steel MACT and ACHD regulations.

49.	The Facility's Title V operating permit incorporates, *inter alia*, Steel MACT O&M requirements set forth in 40 C.F.R. § 63.7800(b), as well as federally enforceable ACHD regulations covering opacity, fugitive emissions, good air pollution control practices, and breakdowns as set forth in ACHD Article XXI §§ 2104.01, 2105.03, 2105.49, and 2108.01.c.

## FIRST CLAIM FOR RELIEF
### (Opacity Violations at Blast Furnaces and BOP Shop)

50. Paragraphs 1 through 49 are realleged and incorporated herein by reference.

51. On numerous occasions since at least December 2016, including on December 20, 2016, May 4, 2017, May 5, 2017, June 5, 2017, June 8, 2017, June 13, 2017, July 10, 2017, and July 12, 2017, Defendant violated the 20% and/or 60% opacity limits set forth in the Facility's Title V Permit and Article XXI § 2104.01.a at the Facility's two blast furnaces.

52. On numerous occasions since at least February 2, 2016, including on February 2, 2016, March 9, 2016, July 28, 2016, August 26, 2016, October 14, 2016, June 6, 2017, June 20, 2017, and June 22, 2017, Defendant violated the 20% and/or 60% opacity limits set forth in the Facility's Title V Permit and Article XXI § 2104.01.a at the BOP Shop.

53. Unless restrained by an Order of the Court, these violations are likely to continue.

54. As provided by Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $109,024 per day for each violation.

## SECOND CLAIM FOR RELIEF
### (Fugitive Emissions at BOP Shop)

55. Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56. On numerous occasions since at least February 2016, including on February 3, 2016, March 28, 2017, and March 30, 2017, Defendant violated the fugitive emissions requirements set forth in the Facility's Title V Permit and Article XXI § 2105.49, due to

Defendant's failure to take reasonable measures to prevent fugitive emissions, such as leaving top level doors open at the BOP Shop and failing to water roadways.

57. Unless restrained by an Order of the Court, these violations are likely to continue.

58. As provided by Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $109,024 per day for each violation.

## THIRD CLAIM FOR RELIEF
**(Failure to Maintain and Operate Equipment to Minimize Emissions)**

59. Paragraphs 1 through 58 are realleged and incorporated by reference.

60. Commencing at least as early as April 2017, including during compliance testing on April 3, 2017 at the Facility's Ladle Metallurgy Furnace baghouse and on April 13, 2017 at the Facility's BOP Shop Secondary/Fugitive baghouse, Defendant violated the requirement to properly maintain and operate air pollution control equipment as set forth in the Facility's Title V Permit and Article XXI § 2105.03, due to Defendant's failure to maintain and repair inoperable rotary valves necessary for the proper operation of baghouse compartments.

61. In addition, Defendant failed to timely notify ACHD of the breakdowns of the rotary valves, despite the substantial likelihood of the breakdowns resulting in a release of potentially toxic or hazardous materials to the open air, in violation of the Facility's Title V Permit and Article XXI § 2108.01.c.

62. Unless restrained by an Order of the Court, these violations are likely to recur.

63. As provided by Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by

the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $109,024 per day for each violation.

### FOURTH CLAIM FOR RELIEF:
### (Failure to Comply with O&M Plan)

64. Paragraphs 1 through 63 are realleged and incorporated by reference.

65. On at least two occasions since July 2014, Defendant violated the requirements of the Facility's Title V Permit and 40 C.F.R. § 63.7800(b), due to Defendant's failure to promptly address problems identified in monthly inspections pursuant to the applicable O&M Plan, including charge hood and seal plate deficiencies in the BOP Shop.

66. Unless restrained by an Order of the Court, these violations are likely to continue.

67. As provided by Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $109,024 per day for each violation.

### Prayer for Relief

WHEREFORE, Plaintiffs the United States of America and the Allegheny County Health Department respectfully request that this Court:

1. Permanently enjoin Defendant from further violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and its implementing regulations;

2. Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations alleged above;

3. Assess civil penalties against Defendant up to the maximum amounts provided for in the applicable statutes and regulations for each violation;

4. Award Plaintiffs their costs in this action; and

5. Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

*s/ Devon Ahearn*
Devon Ahearn (CA307275)
Trial Attorney
Jason A. Dunn (VA42730)
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone (Devon): (202) 514-2717
Phone (Jason): (202) 514-1111
Fax: (202) 616-3531
Email: Devon.Ahearn@usdoj.gov
Email: Jason.Dunn@usdoj.gov

OF COUNSEL:

Daniel Boehmcke
Assistant Regional Counsel
U.S. EPA Region 3

FOR THE ALLEGHENY COUNTY HEALTH DEPARTMENT

*s/ Jason K. Willis*
Jason K. Willis
Solicitor
PA ID No.: 86752
Email: Jason.Willis@alleghenycounty.us
Allegheny County Health Department
301 39th Street, Building 7
Pittsburgh, PA 15201-1811
Telephone: 412-578-8124
Facsimile: 412-578-8144